UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JOSEPH EDWARD CORCORAN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  CAUSE NO. 3:05-CV-389 JD |
| | ) |
| ED BUSS, | ) |
| | ) |
| Respondent. | ) |

## **OPINION & ORDER**

In 1997, Joseph Corcoran shot and killed four men, including his brother and his sister's fiancé. An Indiana jury found him guilty of four counts of murder, found the statutory aggravating circumstance of multiple murders, and unanimously recommended the death penalty. The trial judge agreed and sentenced Corcoran to death. Since then, Corcoran's case has gone before the Indiana Supreme Court a total of five times between direct appeals and proceedings related to collateral review.[1] It has also been heard, on his petition for a writ of habeas corpus, by this court once; by the Seventh Circuit Court of Appeals three times; and by the United States Supreme Court twice.[2] The petition is now before this court a second time, on remand from the Seventh Circuit for resolution of the remaining claims.

Corcoran's petition for habeas corpus initially argued eight grounds for relief, but only two

---

[1] See *Corcoran v. State*, 739 N.E.2d 649 (Ind. 2000); *Corcoran v. State*, 774 N.E.2d 495 (Ind. 2002); *Corcoran v. State*, 820 N.E.2d 655 (Ind. 2005); *Corcoran v. State*, 827 N.E.2d 542 (Ind. 2005); *Corcoran v. State*, 845 N.E.2d 1019 (Ind. 2006).

[2] In order of progression: *Corcoran v. Buss*, 483 F.Supp.2d 709 (N.D.Ind. 2007); *Corcoran v. Buss*, 551 F.3d 703 (7th Cir. 2008); *Corcoran v. Levenhagen*, 558 U.S. 1 (2009); *Corcoran v. Levenhagen*, 593 F.3d 547 (7th Cir. 2010); *Wilson v. Corcoran*, 131 S.Ct. 13 (2010); *Corcoran v. Wilson*, 651 F.3d 611 (7th Cir. 2011).

are still contested: Ground Two and Ground Three. In Ground Two, Corcoran claims that in imposing the death penalty the trial court improperly considered non-statutory aggravating circumstances and failed to consider mitigating evidence, all in violation of the petitioner's constitutional rights as secured by the Eighth and Fourteenth Amendments. In Ground Three, Corcoran claims that Indiana's Death Penalty Statute is facially unconstitutional because it does not distinguish between circumstances that warrant a sentence of death and circumstances that warrant a sentence of life imprisonment without parole ("LWOP"). Both claims were adjudicated on the merits by the Indiana Supreme Court, which ruled in favor of the State. Because Corcoran has not made a showing of error under the requirements set out at 28 U.S.C. § 2254(d), his petition for a writ of habeas corpus must be denied.

## BACKGROUND

On July 26, 1997, Corcoran was lying on his bedroom floor and heard men's voices. He became upset because he thought the men were talking about him and took a semi-automatic rifle downstairs to confront them. In the living room were four men, including Corcoran's brother and future brother-in-law, both of whom lived in the house with Corcoran.

Corcoran shot and killed Jim Corcoran, Scott Turner and Timothy Bricker at close range. The final victim, Doug Stillwell, tried to escape, but Corcoran chased him into the kitchen and shot him in the head.

*Corcoran v. State*, 774 N.E.2d 495, 501 (Ind. 2002). Corcoran would later explain that he was under stress because his sister's upcoming marriage would necessitate his moving out of the house. *See id*. at 497. When he loaded his rifle to confront the four men, he only intended to intimidate them. But, "it just didn't happen that way." *Id*. In its first opinion in this case, the Seventh Circuit Court of Appeals accurately summarized trial and appellate proceedings prior to their taking jurisdiction:

After Corcoran was indicted for four counts of murder under IND. CODE § 35-42-1-1, the State and Corcoran participated in extensive negotiations regarding the

possibility of a plea agreement. The State made two offers: (1) a sentence of life without the possibility of parole in exchange for a plea of guilty, or (2) the dismissal of a request for the death penalty in exchange for Corcoran's agreement to proceed by bench trial instead of jury trial. Corcoran was advised by his counsel (during "several hundred" hours of meetings) that the offers were in his best interest for a number of reasons: (1) Corcoran had made a videotaped confession of the crimes; (2) his confession matched the physical evidence at the crime scene; (3) two of the three court-ordered psychiatrists that evaluated Corcoran concluded that he was competent to stand trial and to aid in his defense; and (4) defense counsel planned to present no defense at trial. Corcoran could not give a specific reason why he was unwilling to accept either offer, stating "I just feel like I should go to trial," and that he could not explain why.[3] Negotiations lasted for approximately nine months, after which the State withdrew its offers and filed four applications for the death penalty.

Before trial, defense counsel gave notice to the court that an insanity defense would be asserted; after court-appointed doctors examined Corcoran and concluded that he was [not insane], defense counsel withdrew its claims. A jury found Corcoran guilty and recommended the death penalty. On August 26, 1999, the district court [*sic*] sentenced Corcoran to death.[4]

On direct appeal, Corcoran filed a written waiver of his right to appeal his convictions and challenged only his death sentence. [Along with] six claims that alleged the Indiana Death Penalty statute violated his state and federal constitutional rights, Corcoran argued that the [State's offer to withdraw its request for a death penalty in exchange for Corcoran's waiver of a jury trial] . . . sought "to force [Corcoran] to abdicate a basic right," when the State actually believed that life imprisonment was the appropriate penalty. *Corcoran v. State*, 739 N.E.2d 649, 654 (Ind. 2000) ("*Corcoran I*"). The Indiana Supreme Court rejected all of Corcoran's arguments and upheld Indiana's Death Penalty statute as it applied to him. *Id.*

---

[3] At the request of defense counsel, an experienced Indiana Public Defender met with Corcoran to make sure he understood the offer made by the State to dismiss the death penalty in exchange for agreeing to a bench trial. She explained to Corcoran that she was "unaware of any other capital murder defendant to whom the prosecution had extended a pre-trial offer to dismiss the death penalty without requiring a guilty plea in exchange," and that "he would still have the opportunity to present evidence and [argue] for a sentence less than life without parole, without facing the risk of a greater sentence." The defense also arranged a meeting between Corcoran and a Public Defender in Marion County, who discussed the logic of why the offers were in Corcoran's best interest. Despite the lengthy discussions, Corcoran offered no specific reason for rejecting the offers, other than he had a "feeling" that he should go to trial.

[4] At the time of Corcoran's sentencing, Indiana law required the trial judge make an independent determination of whether to impose the death sentence. IND. CODE § 35-50-2-9(e); *Lowery v. Anderson*, 225 F.3d 833, 842 (7th Cir. 2000). The statute was amended in 2002, in light of *Ring v. Arizona*, 536 U.S. 584 (2002), to make the jury's decision final. *See* Act of Mar. 26, 2002, Pub.L. No. 117-2002, 2002-2 Ind. Acts 1734; *Ritchie v. State*, 809 N.E.2d 258, 263 n. 1 (Ind. 2004).

In addressing Corcoran's argument that his right to a jury trial was violated, the court emphasized that, under *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), although constitutional limits do apply, the discretionary power of a prosecutor to offer plea bargains is wide. The court found that in the context of plea bargaining, there is no material distinction [between the use of that discretion] to agree to a lesser sentence in exchange for a guilty plea or [in exchange] for a bench trial. *Corcoran I*, at 654. However, the court vacated Corcoran's sentence and remanded to the trial court [due to a potential defect in the sentencing process], finding a "significant possibility that the trial court may have relied upon non-statutory aggravating factors in deciding whether to impose the death penalty" under Indiana law. *Id*. at 657 (citing *Harrison v. State*, 644 N.E.2d 1243 (Ind. 1995)). On September 30, 2001, the trial court reweighed the statutory aggravators under IND. CODE § 35-50-2-9(b)[5] and reinstated Corcoran's death sentence; the Indiana Supreme Court affirmed his sentence on September 5, 2002. *See Corcoran v. State*, 774 N.E.2d 495, 498-99 (Ind. 2002) ("*Corcoran II*").

Corcoran was required to file a petition for post-conviction relief in state court by September 9, 2003. In what would be the first in a series of flip-flops, he refused to sign his petition, believing that he should be put to death for his crimes. At the request of his counsel, a State Public Defender, the trial court scheduled a hearing in October, 2003, to determine whether Corcoran was competent to waive post-trial review of his conviction and sentence. Defense counsel sought the opinions of three mental health experts: clinical psychologist Dr. Robert G. Kaplan; forensic psychiatrist Dr. George Parker; and clinical neuro-psychologist Dr. Edmund Haskins. Each doctor separately interviewed Corcoran and reviewed his mental health records.

At the hearing, all three experts testified that Corcoran suffered from paranoid schizophrenia; the State and the post-conviction court acknowledged the same. According to the experts, symptoms of his disease included delusions that he had a speech disorder and a belief that prison guards were operating an ultrasound machine to torment him. On the basis of that diagnosis, the experts concluded that Corcoran was unable to make a rational decision concerning his legal proceedings. Each expert stated that Corcoran's decision to waive post-conviction review of his sentence, thereby hastening his execution, was premised on his desire to be relieved of the pain that he believed he was experiencing as a result of his delusions. The experts also stated that Corcoran had the capacity to understand his legal position, and Dr. Parker testified that Corcoran had a clear awareness of the status of his case and what was at stake if he waived further proceedings.

Additionally, Corcoran testified at the competency hearing, where the prosecutor and

---

[5]The trial court [balanced the aggravating circumstance of multiple murder against the] mitigating circumstances, including the following: [Corcoran] was under the influence of a mental or emotional disturbance at the time of the murders; Corcoran's cooperation with authorities; his lack of criminal history; and his remorse.

the trial judge questioned him. He stated that he understood it was his last chance at a review of the case, and that if it was unsuccessful, he would be executed. He told the judge that he never wanted a competency hearing, and that he wanted to waive his appeals because he was guilty of murder. He stated:

> I think I should be executed for what I have done and not because I am supposedly tortured with ultrasound or whatever. I am guilty of murder. I should be executed. That is all there is to it. That is what I believe. I believe the death penalty is a just punishment for four counts of murder.

In December, 2003, the post-conviction court found that Corcoran was competent to waive further challenges to his sentence and be executed. The court noted that:

> [The] evidence is clear that [Corcoran] suffers from a mental illness . . . [however the issue before the court was] whether he is competent to waive post-conviction review . . . [t]he dialogue the State and the Court had with [Corcoran] clearly indicate he is competent and understands what he is doing. While his choice of action may be unwise, and obviously against the advice of counsel, he is competent to make this ultimate decision in spite of his mental illness.

The Indiana Supreme Court affirmed the post-conviction court's competency determination. *See Corcoran v. State*, 820 N.E.2d 655, 662, *aff'd on reh'g*, 827 N.E.2d 542 (Ind. 2005) ("*Corcoran III*"). In doing so, the court considered: (1) the testimony of the experts, each of whom concluded that his decision to forego post-conviction review was premised on his desire to be relieved of the delusional pain he was experiencing as a result of his mental illness; (2) the fact that Corcoran did not tell any expert that he wished to end his appeals in order to escape his delusions; (3) his prison records and expert medical testimony which revealed that his psychotic symptoms were being controlled through various psychiatric medications; (4) Corcoran's statements at the hearing that he wanted to waive his appeals; and (5) evidence that Corcoran was aware of his legal position and the consequences of his decision, such as his own testimony at the hearing as well as expert testimony that he was cognizant of his sentence and the appeals process. The court concluded that the evidence supported the trial court's determination that Corcoran had "both a rational understanding of and can appreciate his legal position . . . [and] the evidence does not conclusively indicate that Corcoran's decision was not made in a rational manner." *Id*. at 662.

On February 10, 2005, Corcoran changed his mind and attempted to file a verified state post-conviction petition, which was dismissed as untimely by the trial court; the Indiana Supreme Court affirmed the trial court on April 18, 2006, stating that "[w]e have afforded Corcoran considerable review of his sentence . . . and the

post-conviction court's competency determination. The public interest in achieving finality at this stage weighs heavily against further review." *Corcoran v. State*, 845 N.E.2d 1019, 1023 (Ind. 2006) ("*Corcoran IV*") (internal citations omitted).

On November 8, 2005, Corcoran filed an untimely petition for a writ of habeas corpus with the United States District Court for the Northern District of Indiana, raising eight claims that his constitutional rights had been violated by the proceedings that resulted in his conviction and death sentence. On December 5, 2005, Corcoran again changed his mind and filed a pro se "Petition to Halt All Future Appeals," in which he indicated that he did not wish to further challenge his convictions and sentence. On March 31, 2006, Corcoran sent a letter to the district court, stating that he only signed the post-conviction petition (filed on February 10, 2005) because he believed the Indiana Supreme Court would find him competent. He further stated that he never intended to appeal his sentence, and that he had consented to the filing of the habeas petition in acquiescence to the requests of his wife and his attorneys. He also told the court that he fabricated the story about being tortured by an ultrasound machine in prison, and he denied that his sleep disorder was a motivation to give up on appeal. Corcoran asked the district court to accept the Indiana Supreme Court's finding that he was competent, and in essence, deny his habeas petition.

Against Corcoran's wishes, on April 9, 2007, the district court granted Corcoran's petition for habeas relief under 28 U.S.C. § 2254(d), finding the Indiana Supreme Court's holding in *Corcoran I* that the offer was within "the discretionary powers of the prosecutor" violated Corcoran's right to a jury trial under *United States v. Jackson*, 390 U.S. 570 (1968), which held that a provision of the Federal Kidnapping Act, 18 U.S.C. §§ 1201 and 1202, [which] reserved the possibility of the death penalty exclusively for defendants who insisted on a jury trial imposed an impermissible burden on the right to a jury trial. The district court considered both of the State's offers in adjudicating the present petition, and found that while the first offer to waive the death penalty in exchange for a guilty plea was well within prosecutorial discretion, the second offer sought to coerce Corcoran into waiving his right to a jury trial, and as such, was "objectively unreasonable" under the United States Supreme Court's decision in *Jackson*. *Corcoran v. Buss*, 483 F.Supp.2d 709, 723-24 (N.D.Ind. 2007) ("*Corcoran V*"). The district court distinguished *Bordenkircher* from the instant case, by finding that the State's second offer could not be considered in the context of plea negotiations, for the offer did not seek an admission of guilt. The district court also found that the Indiana Supreme Court, in *Corcoran III*, reasonably concluded that Corcoran was competent to waive his state post-conviction remedies. The court granted Corcoran's petition and ordered the State of Indiana to re-sentence Corcoran to a sentence other than death within 120 days. *Corcoran V*, at 734. The State appealed the grant of the habeas petition to this Court; Corcoran filed a cross-appeal, challenging the district court's conclusion that he was competent to waive his right to post-conviction review.

*Corcoran v. Buss*, 551 F.3d 703, 704-08 (all non-bracketed text and footnotes original). The Supreme Court's second opinion takes it from there:

> [The] Seventh Circuit reversed the District Court's Sixth Amendment ruling. *Corcoran v. Buss*, 551 F.3d 703, 712, 714 (2008). Then, evidently overlooking respondent's remaining sentencing claims, the Seventh Circuit remanded the case to the District Court "with instructions to deny the writ." *Id.*, at 714. To correct this oversight, we granted certiorari and vacated the Seventh Circuit's judgment. *Corcoran v. Levenhagen*, 558 U.S. 1 (2009) (per curiam). We explained that the Court of Appeals "should have permitted the District Court to consider Corcoran's unresolved challenges to his death sentence on remand, or should have itself explained why such consideration was unnecessary." *Id.*, at 9.
>
> On remand—and without any opportunity for briefing by the parties—the Court of Appeals changed course and *granted* habeas relief. *Corcoran v. Levenhagen*, 593 F.3d 547, 555 (2010). After determining that respondent's sentencing challenge had been waived by his failure to include it in his original cross-appeal, the Seventh Circuit concluded that the claim satisfied plain-error review. *Id.*, at 551. The panel explained that, "unlike the Indiana Supreme Court," it was unsatisfied with the trial court's representation that it relied only on aggravating factors authorized by Indiana law. *Ibid.* Because the trial court's revised sentencing order said that it used the nonstatutory factors of heinousness, victims' innocence, and future dangerousness to determine the weight given to the aggravator of multiple murders, the Seventh Circuit concluded that the Indiana Supreme Court had made an "'unreasonable determination of the facts'" when it accepted the trial court's representation that it did not rely on those factors as aggravating circumstances. *Ibid.* (quoting 28 U.S.C. § 2254(d)(2)). The panel therefore required the Indiana trial court to reconsider its sentencing determination in order to "prevent non-compliance with Indiana law." 593 F.3d, at 552–553.
>
> But it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). And we have repeatedly held that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S., at 67–68, 112 S.Ct. 475. But here, the panel's opinion contained no hint that it thought the violation of Indiana law it had unearthed also entailed the infringement of any federal right. Not only did the court frame respondent's claim as whether "the Indiana trial court considered non-statutory aggravating circumstances . . . in contravention of *state law*," 593 F.3d, at 551 (emphasis added), it also explicitly acknowledged that "[n]othing in [its]

opinion prevents Indiana from adopting a rule permitting the use of non-statutory aggravators in the death sentence selection process. *See Zant v. Stephens*, 462 U.S. 862, 878 (1983) (permitting their use under federal law)," *id.*, at 551–552 (citations omitted).

*Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2011) (all non-bracketed text original). On the Supreme Court's vacatur and remand, the Seventh Circuit Court of Appeals took up the case for a third time. In that opinion, *Corcoran v. Wilson*, 651 F.3d 611 (7th Cir. 2011), the Seventh Circuit reinstated its *first* decision, 551 F.3d 703, "to the extent that it (1) reversed the district court's judgment granting habeas relief on the basis of the claimed Sixth Amendment violation; and (2) affirmed the district court's conclusion that the Indiana courts did not mishandle the issue of Corcoran's competence to waive post-conviction remedies." 651 F.3d at 613-14. Then, the Seventh Circuit remanded the case to the district court to address Corcoran's remaining grounds for habeas relief.

Upon reassuming jurisdiction of the case, this court ordered briefing on the remaining claims and held a hearing. The parties agree, and this court has confirmed, that only two of the petitioner's original claims remain to be adjudicated.[6] Those two remaining arguments can be summarized as

---

[6] The State originally thought the petitioner's fourth and seventh grounds for relief remained to be adjudicated as well, and, in its brief on remand, the State argued against the fourth ground on the merits and against the seventh ground on the procedural basis that it was not yet ripe. In his own brief, Corcoran correctly noted that neither ground for relief was presently available in light of the Seventh Circuit's original opinion as reinstated, and in light of the current posture of the case:

> While Respondent briefed Petitioner's Fourth Habeas Ground (see R. 96 pp. 14-17), Petitioner previously conceded procedural default and argued incompetency to waive postconviction as the cause for the default. R. 39 (Traverse) pp. 1-2, 15. Because the Seventh Circuit rejected that competency argument, by a vote of 2-1 (*see Corcoran v. Buss*, 551 F.3d 703 (7th Cir. 2008)), and specifically reinstated that ruling, *see Corcoran*, 651 F.3d at 613-14, Petitioner has no cause and prejudice arguments available pursuant to *Carpenter v. Edwards*, 529 U.S. 446 (2000). Therefore, Petitioner cannot satisfy an exception to the procedural default doctrine and Petitioner will not be responding to Respondent's Memorandum.

> Petitioner agrees with Respondent that Petitioner's Seventh Habeas Ground, related to his incompetence to be executed (see R. 96 p. 20), is not ripe under United States Supreme Court authority. *See Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998). Because the parties are in agreement that this claim is not ripe, Petitioner offers no briefing on this claim. *See Matheney v. Anderson*, 60 F.Supp.2d 846, 868 (N.D. Ind. 1999) (*Ford* claim dismissed without prejudice for

follows:

### Ground Two: Errors in the Sentencing Process
(A)    Corcoran argues that the trial judge erred by considering non-statutory aggravating factors when deciding to impose the death penalty; and
(B)    That the trial judge improperly refused to consider mitigating evidence.

### Ground Three: Constitutionality of the Death Penalty Statute
Corcoran argues that Indiana's Death Penalty Statute violates the Eighth and Fourteenth Amendments because it does not distinguish circumstances that warrant death from those that warrant life imprisonment without the possibility of parole.

Between its first and second opinions, 739 N.E.2d 649 and 774 N.E.2d 495, the Indiana Supreme Court resolved both of these claims on the merits against Corcoran. Accordingly, the requirements of 28 U.S.C. § 2254(d) apply. Because Corcoran has not carried his burden under the statute, his petition for a writ of habeas corpus must be denied.

## ANALYSIS

Federal courts are authorized to grant a writ of habeas corpus only when an individual is held in custody under a state court decision in violation of the laws or the Constitution of the United States. 28 U.S.C. § 2254(a). Pursuant to 28 U.S.C. § 2254(d):

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

---

refiling, if appropriate, at a later date under *Martinez-Villareal*).

[DE 99 at 1-2]. At the hearing, both parties confirmed their positions on the record that only grounds two and three remain to be adjudicated at this time.

State court proceeding.

The court evaluates the decision of the last state court to adjudicate a given claim on the merits under the standards set forth in § 2254(d). *Williams v. Bartow*, 481 F.3d 492, 497-98 (7th Cir. 2007). The last state court decision with respect to Ground Two was "*Corcoran II*," 774 N.E.2d 495, in which the Indiana Supreme Court affirmed the trial court's conduct of the sentencing process following the original remand. The last state court decision with respect to Ground Three was "*Corcoran I*," the Indiana Supreme Court's original decision on direct appeal. The court addresses each claim in turn.

## I.      Ground Two: Errors in the Sentencing Process

### A.      Whether the Trial Judge Violated Corcoran's Constitutional Rights by Relying on Non-Statutory Aggravators in Imposing the Death Penalty.

Corcoran argues that the trial judge relied on non-statutory factors in sentencing him to death even after the Indiana Supreme Court's original remand. He believes that means his sentence was imposed in violation of the Eighth and Fourteenth Amendments. Indiana's Death Penalty Statute, under which Corcoran was sentenced, is codified at IND. CODE § 35-50-2-9. Pursuant to § 35-50-2-9(a):

> The state may seek either a death sentence or a sentence of life imprisonment without parole for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b). In the sentencing hearing after a person is convicted of murder, the state must prove beyond a reasonable doubt the existence of at least one (1) of the aggravating circumstances alleged.

The version of § 35-50-2-9 under which Corcoran was sentenced included 15 aggravating

circumstances, listed in subpart (b).[7] The list included (b)(7), "The defendant has been convicted of another murder[,]" and (b)(8), "The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder." These are the "multiple murder" aggravators upon which the trial court expressly relied. But Corcoran argues that the trial court also relied on *non*-statutory aggravating factors. At the original sentencing hearing, the trial judge made the following remarks:

> Pursuant to the law, Indiana Code 35-50-2-9(k), I'm required to balance aggravating circumstances proved by the State of Indiana against mitigating circumstances proved by the Defense. That has been a very difficult process, and not a process that I have ever taken lightly, and certainly would never take lightly, Mr. Corcoran. Your emotional and mental disturbance is of concern to this Court. Also of concern to this Court is that none of the experts can seem to give me a straight answer, Mr. Corcoran, of what is really going on inside your head. And maybe it is as [the prosecutor] argued in his closing, that society just cannot begin to comprehend why you would do what you did, so we've got to say, there's got to be something wrong with this guy to have done what he did. I'm not going to say that, Mr. Corcoran, because I don't know. I do know, however, that the knowing and intentional murders of four innocent people is an extremely heinous and aggravated crime. That makes you, Mr. Corcoran, a mass murderer. [The prosecutor] is right. I don't think in the history of this county we've had a mass murderer such as yourself. It makes you, Mr. Corcoran, a very dangerous, evil mass murderer. And I am convinced in my heart of hearts, Mr. Corcoran, if given the opportunity, you will murder again.

Based on those remarks, Corcoran argued in his direct appeal that the trial court impermissibly relied on "future dangerousness" to impose the death penalty, which is not one of the statutory factors. On review the Indiana Supreme Court also noted the trial court may have relied on the innocence of the victims or the heinousness of the crime, neither of which are listed in the statute. *See Corcoran I*,

---

[7] In Indiana, the general rule is that "when a defendant is found guilty of an offense, he is to be sentenced in accordance with the statute in force at the time the offense was committed[.]" *Elkins v. State*, 659 N.E.2d 563 (Ind. Ct. App. 1995). Thus, in this case, Corcoran was sentenced in accordance with the version of the sentencing statute in effect in 1997, rather than the version in effect when his sentence was actually handed down in 1999. The only difference between the two is that the 1999 version added a sixteenth aggravating factor: "The victim of the murder was pregnant and the murder resulted in the intentional killing of a fetus that has attained viability." That change has no bearing on this case.

739 N.E.2d at 656-657. Because none of those factors are statutory, and because the statute, as interpreted by the Indiana Supreme Court, instructs that a death sentence can only be based on the aggravators which *are* listed, to rely on them would be a violation of Indiana law. *Corcoran I*, 739 N.E.2d at 655. Accordingly, the Indiana Supreme Court remanded the case to the trial court for resentencing to ensure that such non-statutory factors were not considered.

On remand, the trial court issued a new sentencing order. [DE 96-1]. In addition to reweighing the factors, the trial court stated the following:

> The trial court, in balancing the proved aggravators and mitigators, emphasizes to the Supreme Court that it only relied upon those proven statutory aggravators. The trial court's remarks at the sentencing hearing, and the language in the original sentencing order explain why such high weight was given to the statutory aggravator of multiple murder, and further support the trial court's personal conclusion that the sentence is appropriate punishment for this offender and these crimes.

Based on the trial court's statement, the Indiana Supreme Court said:

> We are now satisfied that the trial court has relied on only aggravators listed in Indiana Code § 35–50–2–9(b). In response to our remand, the trial court stated, "[I]n balancing the proved aggravators and mitigators, [the trial court] emphasizes to the Supreme Court that it only relied upon those proven statutory aggravators." (Supp. R. at 48–49.) There is no lack of clarity in this statement and no plausible reason to believe it untrue.

*Corcoran II*, 774 N.E.2d at 499.

The question of whether or not the trial court relied on a non-statutory aggravating factor is a question of fact, not of law. The Indiana Supreme Court found, as a matter of fact, that the trial court only relied on statutory factors. That being the case, this issue hinges on the application of § 2254(d)(2). For Corcoran to succeed under § 2254(d)(2), he needs to show (1) that the Indiana Supreme Court's decision that the trial court did not rely on non-statutory factors was an "unreasonable determination of the facts in light of the evidence presented in the State court

proceeding[;]" and (2) that the unreasonable determination of the facts led to a violation of a clearly established federal right. *See Wilson v. Corcoran*, 131 S.Ct. at 16-17; *see also* 28 U.S.C. § 2254(a), 2254(d)(2). Corcoran fails on the first point, but even if he did not, he would fail on the second.

## 1. The Indiana Supreme Court's factual determination was not unreasonable.

Corcoran's argument that the trial court relied on non-statutory aggravating factors, even after the Indiana Supreme Court remanded the case for the specific purpose of avoiding that result, is nearly identical to the position taken by the Seventh Circuit in its second opinion:

> [T]his finding of fact, that the trial court did not consider non-statutory aggravators in the balancing process used to determine Corcoran's death sentence, was obviously in error, if we are to believe what the trial court added next. Specifically, it stated that its "remarks at the sentencing hearing, and the language in the original sentencing order," – both regarding the use of the three non-statutory aggravators about which Corcoran complained – *explain why such high weight was given to the statutory aggravator of multiple murder." See [Corcoran II,*] (emphasis added). In other words, the court added weight to a statutory aggravator based on the non-statutory aggravators. And factor weighting is part of factor "balancing," the very process in which the trial court disclaimed reliance on non-statutory aggravators. So unlike the Indiana Supreme Court, we are far from "satisfied that the trial court has relied only on aggravators listed in Indiana Code § 35-50-2-9(b)." *Corcoran v. State*, 774 N.E.2d 495, 499 (Ind. 2002). Indeed, we find this an "unreasonable determination of the facts" in light of the trial court's proceedings, thus warranting habeas relief. 28 U.S.C. § 2254.

The United States Supreme Court vacated that Seventh Circuit opinion, and it has never been reinstated. Accordingly, it has no legal effect, in this case or otherwise. *See United States v. Sigma Intern., Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (*en banc*) (noting that vacated opinions are "officially gone. They have no legal effect whatever. They are void. None of the statements made in [them] has any remaining force and cannot be considered to express the view of [the issuing] Court."). But, Corcoran relies on the vacated opinion nonetheless.

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating

state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "[A] state court decision involves 'an unreasonable determination of the facts' under § 2254(d)(2) only when the state court makes an 'unreasonable error.'" *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) (quoting *Morgan v. Hardy*, 662 F.3d 790, 798 (7th Cir.2011)). "After AEDPA, [the court is] required to presume a state court's account of the facts correct, and the petitioner has 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Id.* (citing 28 U.S.C. § 2254(e)(1); *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005)). "The standard is demanding but not insatiable[.]" *Id.*

Here, there is more than one reasonable way to interpret the trial court's statement following remand. The trial court's sentencing order began by identifying the statutory aggravators of multiple murder, with respect to each of the murders for which Corcoran was convicted, and by assigning those aggravators a high weight. [DE 96-1 at 1-2]. The trial court then proceeded directly to a discussion of the defendant's proposed mitigating circumstances; there was no discussion at all of any additional, non-statutory aggravators. Finally, after addressing the proposed mitigators, the trial court provided a statement directly to the Indiana Supreme Court, in light of the initial remand. After assuring the Indiana Supreme Court that it relied only on aggravators listed in Indiana Code § 35–50–2–9(b) in re-sentencing Corcoran to death, the trial court explained that its "remarks at the sentencing hearing, and the language in the original sentencing order[,] explain why such high weight was given to the statutory aggravator of multiple murder, and further support the trial court's personal conclusion that the sentence is appropriate punishment for this offender and these crimes." [DE 96-1 at 4]. One possible interpretation of that statement – the one argued by Corcoran – is that

14

the trial court was *still* relying on non-statutory aggravators, either independently or in conjunction with its consideration of the multiple murder factor.

Another way to interpret the statement, however, is to take the trial court at its word. The trial court took the case back on remand with specific instructions from the Indiana Supreme Court to rely only on statutory aggravators in reaching a sentencing decision. In response, the trial court resentenced Corcoran to death, and explicitly emphasized to the Indiana Supreme Court that in doing so it relied only on proven, statutory aggravators. The language that came next can reasonably (and consistently with its natural import) be understood as referring back to the *original* sentencing hearing and to the trial court's *original* sentencing statement, which were the subject of the remand, and not to its new decision. The language explains why the trial court did what it did *previously*, without having any bearing whatsoever on what the trial court was doing *presently*. Presently, the trial court emphasized that it was relying only on proven statutory aggravators, and it in fact never mentioned any non-statutory aggravators at any point in the revised sentencing order. This interpretation – that the trial court was neither confused nor lying when it said it only relied on statutory aggravators, and only brought them up obliquely and in reference to a previous order – was the one adopted by the Indiana Supreme Court.

Regardless of whether the interpretation Corcoran advances or the Indiana Supreme Court's interpretation is the "right" one, the interpretation espoused by the Indiana Supreme Court is perfectly reasonable. To be sure, Corcoran's interpretation of the trial court's reference to its remarks at the original sentencing hearing might also be reasonable, but it is not so plainly the *only* reasonable theory that it shows by clear and convincing evidence that the Indiana Supreme Court's interpretation was an unreasonable error. That is what Corcoran would need to do to rebut the

presumption of correctness afforded to the state court factual finding under AEDPA. *Coleman*, 690 F.3d at 815. In short, this court simply cannot say that the Indiana Supreme Court justices' decision to take the trial court at its word when it specifically told them it relied only on statutory factors was unreasonable. As a result, no habeas relief is available to Corcoran on the grounds that the trial court relied on non-statutory aggravating factors.

> **2.    Even if the Indiana Supreme Court's factual determination was unreasonable, Corcoran has not shown that the trial court's reliance on a non-statutory factor violated his federally secured rights.**

Corcoran has not shown that the state court decision was an unreasonable determination of the facts. But even if he had, that would not be the end of the matter. Corcoran would have to show that the facts as "correctly" determined involved a violation of his clearly established, federally-secured rights. *Wilson v. Corcoran*, 131 S.Ct. at 16-17. He has suggested two possible bases for relief, one under the Eighth Amendment and one under the Due Process Clause of the Fourteenth Amendment. Neither argument is persuasive.

### i.    Eighth Amendment

The Eighth Amendment to the United States Constitution, as applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Robinson v. California*, 370 U.S. 660, 666 (1962), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." It is by now well-settled that capital punishment, generally speaking, does not violate the Eighth Amendment. *See Gregg v. Georgia*, 428 U.S. 153, 176-77 (1976). But even so, states must take steps to make sure the death penalty is not arbitrarily or freakishly imposed. *See Furman v. Georgia*, 408 U.S. 238 (1972). Corcoran argues that reliance on a non-statutory factor in this case would produce just such a result.

The primary difficulty for Corcoran is that the Supreme Court has already decided that reliance on a non-statutory factor, even if it did actually happen, is not necessarily an Eighth Amendment violation. *See Zant v. Stephens*, 462 U.S. 862, 878 (1983). A Supreme Court case, *Wainwright v. Goode*, 464 U.S. 78 (1983), explains the applicable rule. In that case, a Florida court relied on "future dangerousness" in imposing the death penalty, even though future dangerousness was not an authorized factor under the state sentencing statute. The Supreme Court explained that mere errors of state law – such as relying on a factor not permitted by the state statute – "are not the concern of this Court." *Id*. at 86. "The critical question 'is whether the trial judge's consideration of this improper aggravating circumstance so infects the balancing process created by the [state] statute that it is constitutionally impermissible for the [state] Supreme Court to let the sentence stand." *Id*. (citing *Barclay v. Florida*, 463 U.S. 939 (1983)). *Wainwright* therefore shows that reliance on a non-statutory factor is not *itself* an automatic violation of the Eighth Amendment; what matters is whether reliance on the particular factor at issue is for some reason independently constitutionally problematic or produces an independently unconstitutional sentence.

Corcoran cites four cases which he believes rebut that proposition and show that reliance on a non-statutory factor is "indisputably" unconstitutional: *Johnson v. Mississippi*, 486 U.S. 578 (1988); *Clemons v. Mississippi*, 494 U.S. 738 (1990); *Parker v. Dugger*, 498 U.S. 308 (1991); and *Sochor v. Florida*, 504 U.S. 527 (1992). True, each of those cases held that a trial court's reliance on an "invalid" or "constitutionally impermissible" aggravating factor in imposing the death sentence was an Eighth Amendment violation,[8] whether that factor was a statutory one or not. *See,*

---

[8] *Sochor* dealt with a trial court that weighed a factor which was listed in the statute but which was found unconstitutionally vague, as well as with another statutory factor which was unsupported by the evidence; *Johnson* dealt with a statutory factor that was unsupported by the evidence; *Parker* dealt with two statutory factors that were unsupported by the evidence; and *Clemons* dealt with an "improperly defined" statutory factor.

*e.g., Sochor*, 504 U.S. at 532 ("In a weighing state . . . there is Eighth Amendment error when the sentencer weighs an 'invalid' aggravating circumstance in reaching the ultimate decision to impose a death sentence."). But none of the cases overruled *Wainwright*, and not one held that a "non-statutory" factor is automatically a "constitutionally impermissible" or "invalid" factor. Moreover, Corcoran's interpretation of those cases would put them directly at odds with *Wainwright*. Since *Wainwright* upheld a sentence which was imposed by the State of Florida – like Indiana, a weighing state – and which was explicitly founded on a non-statutory factor, it simply cannot be squared with the rule of "*per se* unconstitutionality" which Corcoran has proposed. Despite Corcoran's assertions, *Wainwright* is still good law. The contradiction therefore presents a problem for him.

Corcoran seems to think *Hough v. Anderson*, 272 F.3d 878 (7th Cir. 2001), closes the gap. In *Hough*, the Seventh Circuit summarized the differences between "weighing" and "non-weighing" states when it comes to the capital punishment process. *Id*. at 905. The court observed that in a weighing state, "[o]nly statutory aggravating factors are weighed against mitigating factors to determine if the death sentence is appropriate." *Id*. But that was a simple observation about how the sentencing process works in a state with a weighing statute. It was not a statement of what is required by the Eighth Amendment. Nobody disputes that Indiana's scheme required reliance on only statutory factors; the question is whether it is a problem under *federal* law when Indiana departs. The remainder of the *Hough* opinion simply summarizes cases like *Clemons* and *Sochor*, and reiterates their holdings that reliance on a constitutionally invalid factor is impermissible. *Id*. at 906-07. But, again, those cases both dealt with statutory factors which were themselves unconstitutional, not with non-statutory factors, and they never equated "non-statutory" with

"constitutionally impermissible."

Ultimately, in *Hough*, the Seventh Circuit never answered the question before this court, because it concluded that there was no evidence of reliance on non-statutory factors in the first place. Therefore, contrary to Corcoran's argument, *Hough* does not somehow abrogate *Wainwright*. Nor can it, for the purpose of determining "clearly established" law. *Hough* is a Seventh Circuit case, and the "clearly established" inquiry deals only with federal law "as determined by the Supreme Court of the United States[.]" *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (citing 28 U.S.C. § 2254(d)(1)).

Reading *Wainwright* along with the cases cited by Corcoran, the court concludes that there is no clearly established federal law, as determined by Supreme Court precedent, holding that weighing a non-statutory factor is an Eighth Amendment violation *per se*. Instead, the cases show that reliance on *any* factor, whether statutory or non-statutory, which is itself unconstitutional or unsupported by the evidence, likely presents an Eighth Amendment problem. Whether it does or does not depends on the answer to a second question: whether the trial court's erroneous reliance on the factor impermissibly infected the sentencing process to the point of constitutional defect. *See Wainwright*, 464 U.S. at 86.[9]

In this case, even if Corcoran had shown that the state court's factual determination was unreasonable – and he has not – he has not shown that relying on the non-statutory factors in question produced a sentence that violates the Eighth Amendment. In *Wainwright*, the Court upheld

---

[9] The court notes that in addition to the clear and binding import of *Wainwright*, a practical observation about this case's procedural history shows that Corcoran's theory cannot be correct. The United States Supreme Court's treatment of the case shows that it does not think reliance on a non-statutory aggravating factor is a *per se* violation of the federal constitution. It would not have been necessary to issue a remand for a case-specific inquiry into whether reliance on a non-statutory factor was a violation of federal law, if the simple fact of reliance already answered that question. The remand itself shows that more is required.

a sentence based on the non-statutory aggravator of "future dangerousness" because the trial court's reliance on that factor did not "so infect[] the balancing process created by the Florida statute that it [would be] constitutionally impermissible for the Florida Supreme Court to let the sentence stand." 464 U.S. at 86 (citations omitted). In reaching that conclusion, the Court relied heavily on its findings that: (1) a properly instructed jury had recommended the death penalty in the first place; and (2) that the state supreme court had independently found that the sentence was a reasonable one. Both of those circumstances are also present here, and that counsels in favor of the same result. *See Corcoran II*, 774 N.E.2d at 501-02 (independently balancing the factors to resolve Corcoran's argument that his death sentence was unreasonable). Furthermore, while *Wainwright* dealt only with "future dangerousness," the same considerations apply to the other non-statutory factors on which Corcoran alleges the trial court relied, such as the innocence of the victims. He has provided no authority to indicate that reliance on such a factor is unconstitutional in and of itself, and, as in *Wainwright*, the unanimous jury verdict and the independent Indiana Supreme Court finding that the sentence was reasonable help to show that the balancing process was not unconstitutionally compromised.

### ii. Fourteenth Amendment

Corcoran also makes a due process argument in general terms, relying primarily on *Hicks v. Oklahoma*, 447 U.S. 343 (1980). In that case, a trial jury was erroneously instructed that it was required by law to sentence the defendant to a 40-year term of imprisonment. Had the jury been properly instructed, the sentence might have been as low as ten years. The Supreme Court held that the error was more than just an issue of state procedure: "Where . . . a State has provided for the imposition of criminal punishment in the discretion of the trial jury . . . [the defendant] has a

substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion[.]" 447 U.S. at 346.

Corcoran's *Hicks* argument is somewhat underdeveloped, but seems to rest on his assertion that "the Indiana Supreme Court cannot arbitrarily disregard[ ] what makes the Indiana death penalty statute constitutional, the prohibition of the consideration of non-statutory aggravators[.]" [DE 99 at 8]. That line of argument, as stated by Corcoran, is a non-starter. Indiana is *not* constitutionally required to adopt a system wherein only statutory aggravators may be considered, and it therefore cannot be said that the limitation to statutory aggravators is what "makes" the system constitutional. It could be perfectly constitutional without that limitation, provided that at least one statutory aggravator was required. *See, e.g., Wilson v. Corcoran*, 131 S.Ct. 13, 16 (acknowledging that nothing prevents Indiana from adopting a rule that permits the consideration of non-statutory aggravators); *Stephens*, 462 U.S. at 878 (upholding constitutionality of "narrowing" systems, which permit consideration of non-statutory aggravating factors once at least one statutory aggravator has been found); *Hough*, 272 F.3d at 905 (describing "non-weighing" schemes in which consideration of non-statutory aggravators is not a constitutional problem). Perhaps a better formulation of Corcoran's argument is that Indiana had no obligation to create a system which limits the sentencer to the consideration of statutory aggravating factors, but that once Indiana chose to do so, the Due Process Clause required it to honor its choice.

That argument has a certain theoretical appeal, but Corcoran did not clearly advance it or present any case law in support of it, let alone reference a clearly established Supreme Court precedent. Moreover, this court has been unable to find a body of case law developing the concept. Accordingly, the court must resort to general due process principles. Those principles do not cut in

Corcoran's favor. In order to show a due process violation, the petitioner must show: (1) that he possessed a protected interest; and (2) that the process offered by the state did not meet constitutional standards. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). Corcoran's life is *the* essential protected interest; passing the first prong of the test is no challenge. But this court cannot say the process offered by the state did not meet constitutional standards when it is so well-settled that there is nothing inherently problematic about a state system that openly allows the consideration of non-statutory factors in imposing the death penalty, so long as at least one statutory "qualifier" is found. *See, e.g., Stringer v. Black*, 503 U.S. 222, 231-32 (1992); *Stephens*, 462 U.S. at 878. Even if Corcoran was right about the facts, his argument, stripped to its essence, is that he was sentenced through a narrowing process in a weighing state. Under well-settled Supreme Court precedent, *neither* process offends the federal constitution. Without clear authority for doing so, this court cannot say that "process [sufficient to] meet constitutional standards" in Georgia, *see Stephens*, *supra*, is insufficient to meet constitutional standards in Indiana. Corcoran has not presented a viable due process claim.

The Indiana Supreme Court's factual determination that the trial court did not rely on non-statutory aggravators was not unreasonable. As a result, Corcoran is not entitled to the writ on these grounds. Even if the factual determination was unreasonable, however, Corcoran's claim would fail because he has not shown a basis for federal relief.

**B.      Whether the Trial Court Improperly Refused to Consider Mitigating Evidence**

Corcoran's second argument relative to the sentencing process is that the trial court improperly refused to consider mitigating evidence. Corcoran rightly points out that a criminal defendant is entitled to individualized consideration, based on the circumstances of his crime and

on his character, before the death sentence may be imposed. *See Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). One of the baseline constitutional requirements for a capital sentencing scheme is that "'the sentencer [must] not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982) (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)); *see also Penry v. Lynaugh*, 492 U.S. 302, 319 (1989); *Hitchcock v. Dugger*, 481 U.S. 393, 394 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 4 (1986). Furthermore, "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Eddings*, 455 U.S. at 114-15 (emphasis original).

All the same, while the sentencer is required by law to *consider*, and not exclude, any relevant evidence offered by the defendant as mitigating, it is not required to be convinced, as a factual matter, that such evidence is *actually* mitigating, or to give it the exact amount of weight the defendant thinks it deserves. *See Allen v. Buss*, 558 F.3d 657, 667 (7th Cir. 2009) ("[O]f course, a court may choose to give mitigating evidence little or no weight.") (citing *Eddings*, 455 U.S. at 114-15). For example, the sentencer need not treat proffered evidence as mitigating if it is in fact irrelevant, or if it is in fact aggravating and not mitigating. The sentencer may also reasonably decide to assign low weight to relevant mitigating evidence in the balancing process, depending on the circumstances of the case. *Id*. The debate between the parties in this case is whether the trial court refused to consider relevant mitigating evidence at all, which would be an *Eddings* violation, or whether it did consider all of the relevant evidence but reasonably drew conclusions adverse to Corcoran. The Indiana Supreme Court concluded the latter, and "a reviewing court's

characterization of what the trial judge found is one of historical fact." *Wright v. Walls*, 288 F.3d

937, 944 (7th Cir. 2002) (citing *Parker v. Dugger*, 498 U.S. 308 (1991); *Wainwright*, 464 U.S. 78;

and *Rivera v. Sheriff of Cook Cnty.*, 162 F.3d 486 (7th Cir. 1998)). As a result, § 2254(d)(2)'s highly

deferential "unreasonable determination of the facts" standard of review applies to this claim as well.

The Indiana Supreme Court's last decision on this issue is found in *Corcoran II*, 774 N.E.2d

at 500:

> Corcoran's argument that the trial court did not consider six of the proffered
> mitigating circumstances is without merit. As the mitigating circumstances were not
> the focus of our concern, we are not surprised that the trial court's second order
> analyzed only those aggravating and mitigating circumstances it found pertinent to
> the task on remand.

> The trial judge had in fact analyzed Corcoran's proffered mitigators in the course of
> its original sentencing. Our review of the record also persuades us that the trial court
> properly rejected the remaining factors in the original sentencing order. Corcoran
> claimed first that his mental disease affected his capacity to appreciate or conform
> his conduct. As we discuss in greater detail below, the trial court did not err in
> rejecting it.

> In a related vein, Corcoran also asked the court to consider the fact that he shielded
> his young niece from the bloodshed as a mitigator. But this fact cuts both ways. His
> actions demonstrate a keen awareness of the events that were to follow, and suggest
> to us that his capacity to appreciate the criminality of his conduct was not inhibited.

> Third, Corcoran argues that his mental disease prevented him from competently
> assisting in his defense, stemming primarily from his refusal of favorable plea
> recommendations offered by the State. The State's pleas would have kept Corcoran
> in jail for life, but Corcoran rejected each. He chose instead to exercise his
> constitutional right to a jury trial, therefore creating the potential for a lesser
> sentence, a favorable jury recommendation, or an outright acquittal. Corcoran's
> choice will not act simultaneously as a mitigator for his benefit.

> The remaining three factors are also without merit. Corcoran was twenty-two at the
> time of the murders, and offered his age as a mitigator. Although chronological age
> is not the end of the inquiry for young adults, considering both the seriousness of this
> crime and the fact that Corcoran is well past the age of sixteen where the law
> requires special treatment, we find no abuse of discretion. *See Monegan v. State*, 756
> N.E.2d 499, 504–05 (Ind. 2001). The fifth rejected factor was Corcoran's good

behavior in jail prior to sentencing. We agree with the trial court that this is expected of persons who are incarcerated. *See Walter v. State*, 727 N.E.2d 443, 448–49 (Ind. 2000). Even if it is an appropriate mitigator, its weight is modest and we find no abuse of discretion here either. Finally, Corcoran asserted that his admission of guilt through all phases of the legal process should be a mitigating circumstance. Of course, Corcoran did not admit his guilt in the sense that one does in pleading guilty. Corcoran demanded a jury trial and subjected the victims' families and loved ones to a trial. The trial court did not abuse its discretion in declining to find this mitigator.

In accordance with our guidance in *Harrison* and *Holsinger*, the trial court explicitly identified the proven mitigating circumstances and listed the specific facts and reasons that led the court to find their existence. The trial court fulfilled its resentencing duties.

774 N.E.2d at 500-01 (record citations omitted). This court's task is to assess the reasonableness of the Indiana Supreme Court's factual finding that the trial court did consider all of Corcoran's proffered mitigators in light of the record.

Corcoran did indeed argue ten mitigating factors before the trial court, as confirmed in the trial court's order. [DE 96-1 at 2]. As the Indiana Supreme Court noted, the trial court's revised sentencing order[10] – the one issued after the *Corcoran I* remand – found four of those argued mitigators were proved, *i.e.* consistent with the evidence, and assigned them varying weight based on its assessment of the totality of the circumstances: (1) Corcoran was under the influence of a mental or emotional disturbance at the time he committed the murders (medium weight); (2) Corcoran cooperated fully with authorities investigating his crime (low weight); (3) Corcoran's criminal history was limited prior to these murders (low weight); and (4) Corcoran was genuinely remorseful (low weight). It cannot be genuinely argued that the trial court "refused to consider" any

---

[10] With respect to mitigating circumstances, the trial court's revised sentencing order is identical to its original sentencing order. [Compare DE 96-1 with DE 32-3 at 71-77]. The court references the revised sentencing order here because it was the primary subject of the Indiana Supreme Court's analysis in Corcoran II, which represents the last state court decision on the subject.

of these four proposed mitigators, or that the Indiana Supreme Court's finding that they were considered was unreasonable.

The trial court also addressed, at length, an odd pair of arguments which were presented as mitigating evidence but which were really legal assertions about Corcoran's sanity and competence to stand trial, issues that were essentially already resolved earlier in the litigation. Corcoran argued that he lacked the capacity to understand the criminality of his conduct as a result of mental disease or defect, and that his mental illness rendered him unable to adequately assist counsel in the presentation of his defense. [DE 96-1 at 2-3]. The trial court reviewed all of the evidence introduced throughout the case with respect to Corcoran's mental and emotional condition. To some extent, the evidence was ambiguous, with expert opinions on Corcoran's condition varying considerably. But the trial court's conclusion, based on several paragraphs' worth of analysis of those opinions and the manner in which Corcoran had conducted himself throughout the litigation, was that Corcoran had not proved that he lacked the mental capacity to understand his conduct or to assist in his defense. Since the facts were not as the defendant argued them, and since the trial court had already determined those issues against Corcoran, the trial court did not assign any mitigating weight to the defendant's version of the facts.

Corcoran also argued four other assorted mitigating circumstances. First, he argued that he continually admitted his guilt at all stages of the legal process. The trial court felt that simply was not true. Corcoran had not pled guilty, and had demanded (and received) a jury trial. It was certainly curious that he did all of that, given that he had confessed to the murders during the investigative process and that he accepted responsibility once again in front of the jury, but the trial court concluded that if Corcoran had in fact admitted his guilt at all stages of the legal process, he would

have pled guilty. Second, Corcoran argued that his good behavior while incarcerated was a mitigating circumstance. The trial court found that the defendant did behave well, but "[did] not consider this to be a mitigating circumstance[,]" since good behavior is expected of incarcerated individuals. [DE 96-1 at 4]. Third, Corcoran argued that the fact that he shielded his 7-year old niece from the murders he was about to commit was a mitigating circumstance. The trial court did not apply that as a mitigating factor, since the only reason she was in a position to witness a murder in the first place was because the defendant was about to murder four people. Fourth, Corcoran argued that his age was a mitigating circumstance. The trial court did not provide an analysis of Corcoran's age, which was 22 at the time of the murders, nor even specifically mention it in the written revised sentencing order.

In light of the foregoing, it was not unreasonable for the Indiana Supreme Court to find that the first nine proffered mitigators – that is, all of them except Corcoran's age – were properly considered. The trial court clearly did not "exclude" any of the evidence relating to those factors from its consideration, as would violate the *Eddings* rule. *See Allen*, 558 F.3d at 667. To the contrary, the trial court heard Corcoran's proffered mitigators, considered each one of the first nine in writing, and explained why it either: found that it was proved and assigned a certain weight; found that it was proved but was not actually mitigating (and therefore assigned no weight); or found that it was not proved. That is all perfectly acceptable. *Id.*[11]

---

[11] Corcoran argues that the trial court's finding that several of his proffered mitigators were not actually mitigating *itself* amounts to an *Eddings* violation. That is not correct. Evidence is not mitigating simply because a criminal defendant says it is. The *Eddings* rule, along with general due process principles, requires that the sentencer hear and consider the defendant's arguments in mitigation. But it does not require the sentencer to believe or be persuaded by everything it hears:

A careful examination of *Eddings* reveals that the Constitution prescribes only that the sentencer hear and consider all the evidence a defendant chooses to offer in mitigation. There is no requirement that the court agree with the defendant's view that it is mitigating, only that the proffer

The issue of Corcoran's age, however, is slightly more complex. Unlike the other nine proffered mitigators, the trial court did not analyze Corcoran's age in writing. Nonetheless, the Indiana Supreme Court found age was considered. *Corcoran II*, 774 N.E.2d at 500.[12] The question is whether the Indiana Supreme Court's interpretation of the trial court's silence on the subject of age to mean that the trial court considered and rejected it, rather than simply failed to consider it, was reasonable. The law in our circuit says that it was. Under Seventh Circuit precedent, in the absence of a statement expressly indicating that the trial court ignored Corcoran's age, it is "plausible" to assume that the trial court simply did not consider Corcoran's age to be mitigating. *Allen*, 558 F.3d at 667. Pursuant to *Allen*, when a state supreme court draws that conclusion, we defer to their judgment. *Id.* (citing *Todd v. Schomig*, 283 F.3d 842, 855 (7th Cir. 2002)); *see also Dobbert v. Strickland*, 718 F.2d 1518 (11th Cir. 1983) ("The fact that the sentencing order does not refer to the specific types of non-statutory 'mitigating' evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered.").

Considering the cited precedents, it was reasonable for the Indiana Supreme Court to conclude that the trial court considered *all* of Corcoran's proffered mitigators – as it said it did – and simply found that his age was not actually mitigating. Since that decision was not an unreasonable

---

be given consideration.

*Raulerson v. Wainwright*, 732 F.2d 803, 807 (11th Cir. 1984). *See also Adamson v. Ricketts*, 865 F.2d 1011, 1061 (9th Cir. 1988) ("this rule requiring the sentencer to allow in and to listen to all mitigating evidence, does not require that the sentencer give a particular weight to the evidence or that the sentencer consider irrelevant evidence."), *abrogated on other grounds*, *Walton v. Arizona*, 497 U.S. 639 (1990). With respect to the first nine proffered mitigators, Corcoran's argument is not convincing.

[12] Since it would have been an abuse of discretion for the trial court to refuse to consider age, the Indiana Supreme Court's finding that there was no abuse of discretion amounts to a finding that it was considered.

determination of the facts, Corcoran has not carried his burden and is not entitled to relief.

Finally, the court notes one other circumstance which supports its conclusion. The Indiana Supreme Court itself independently considered each mitigator, even if the trial court did not. Under *Eddings*, the reviewing court – in addition to the sentencer – is free to determine how much weight to afford to proffered mitigating evidence, so long as that evidence is considered. 455 U.S. at 115 ("the [state court of appeals] on review, may determine the weight to be given relevant mitigating evidence"). Thus, even if the trial court failed to consider Corcoran's age, the Indiana Supreme Court did consider it, found that it was not mitigating, and independently determined that the sentence was not unreasonable. That cures any error under *Eddings*, and further reinforces the court's conclusion that Corcoran's claim is without merit.

## II.    Ground Three: Constitutionality of Indiana's Death Penalty Statute

As previously mentioned, Indiana's Death Penalty Statute is codified at Ind. Code § 35-50-2-9. Pursuant to the statute, "The state may seek either a death sentence or a sentence of life imprisonment without parole for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b)." In addition to the requirement that at least one statutory aggravator be found, a death sentence, or a sentence of life without parole, may only be imposed where the aggravators outweigh the mitigators. *See* 35-50-2-9(l). Corcoran argues that the statute is unconstitutional because, by using the same "qualifying" factors to make defendants eligible for the death penalty and for life imprisonment without parole, it does not sufficiently narrow the class of people eligible for the death penalty.

The Indiana Supreme Court concluded that Indiana's Death Penalty Statute is constitutional,

and adequately uses factors to narrow the class of death-eligible defendants:

> The Indiana capital sentencing scheme satisfies [the requirements of federal law] by prescribing particular aggravating circumstances that narrow the class of murderers eligible for the death penalty . . . Even with the addition of life without parole as an alternative punishment for death-eligible murderers[,] the Indiana system rationally distinguishes between those individuals for whom death is an appropriate sanction and those for whom it is not. Just as there is no constitutional defect under the Indiana death penalty statute, which gives the Indiana sentencer discretion to choose between death and imprisonment for a term of years, so also there is no defect in permitting the sentencer to choose the alternative of life imprisonment without parole.

*Corcoran I*, 739 N.E.2d at 653. The constitutionality of the statute is a legal question. As a result, § 2254(d)(1) provides the standard of review. For Corcoran to prevail, he must show that the Indiana Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court of the United States. That is a difficult standard to meet: "Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S.Ct. 26, 27 (2011) (internal citations omitted). *See also Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The court's task is to compare the Indiana statute to the requirements of Supreme Court jurisprudence, according to the AEDPA standard.

"A state's death penalty statute is constitutional so long as the statute establishes a threshold *below* which the [death] penalty cannot be imposed." *Romano v. Oklahoma*, 512 U.S. 1, 6 (1994) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 305 (1987)) (emphasis added). The statute must contain "rational criteria that narrow the decision-maker's judgment as to whether the circumstances of a

particular defendant's case meet that threshold." *McCleskey*, 481 U.S. at 305. As the Supreme Court has stated:

> Together, our decisions in *Furman v. Georgia*, 408 U.S. 238 (1972) (per curiam), and *Gregg v. Georgia*, 428 U.S. 153 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.), establish that a state capital sentencing system must: (1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime. *See id.*, at 189, 96 S.Ct. 2909. So long as a state system satisfies these requirements, our precedents establish that a State enjoys a range of discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances are to be weighed. *See Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) (plurality opinion) (citing *Zant v. Stephens*, 462 U.S. 862, 875–876, n. 13 (1983)).

*Kansas v. Marsh*, 548 U.S. 163, 173-74 (2006).

Corcoran has not advanced any credible argument as to why the inclusion of a more merciful option in Indiana's Death Penalty Statute makes it unconstitutional. The system (1) does rationally narrow the class of death-eligible defendants by using statutory aggravating factors, and (2) does permit a jury to render an individualized determination by considering both statutory and not-statutory mitigating circumstances and weighing those against the proven aggravators. That is undeniable given the statutory text, and is also consistent with the requirements listed in Supreme Court precedent. Moreover, the rule is that a state's death penalty statute must establish a threshold *below* which the death penalty cannot be imposed, *see Romano*, 512 U.S. at 6, not that it must establish a threshold *above* which *only* the death penalty may be imposed. In short, no clearly established law requires the sort of scheme the petitioner has requested. Indiana's death penalty is not unconstitutional simply because it allows the sentencer the discretion *not* to sentence a defendant to death, even when a qualifying factor is found. Corcoran's claim is meritless.

**CONCLUSION**

There is nothing easy about any death penalty case. In this one, however, the petitioner has not carried the burden set upon him by the law. He has not shown that the Indiana Supreme Court's factual determinations with respect to his second claimed ground for relief were unreasonable, and he has not shown that the Indiana Supreme Court's legal decision to uphold the Indiana Death Penalty Statute was contrary to United States Supreme Court precedent. He is therefore not entitled to relief, and his petition for a writ of habeas corpus is **DENIED**.

SO ORDERED.

ENTERED:  January 10, 2013 

                              /s/ JON E. DEGUILIO
                    Judge
                    United States District Court